UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE NO. 20-01820-dd |
| Chase Douglas Clelland | ) | |
| Emily H. Clelland | ) | CHAPTER: 11 |
| | ) | |
| Debtors in Possession | ) | |

PLAN OF REORGANIZATION
Filed by the Debtor in Possession
On June 12, 2020

TABLE OF CONTENTS

## Contents

I.      INTRODUCTION ......................................................................................................... 2
II.     DEFINITIONS.............................................................................................................. 3
III.    BACKGROUND ........................................................................................................... 5
IV.     FINANCIAL CONDITION OF THE DEBTOR.......................................................... 7
V.      ASSETS AND DEBTS ................................................................................................. 8
VI.     LIQUIDATION ANALYSIS........................................................................................ 9
VII.    TAX IMPLICATIONS ............................................................................................... 10
VIII.   LITIGATION.............................................................................................................. 10
IX.     PROPOSED PLAN..................................................................................................... 11
X.      CLAIMS OBJECTIONS ............................................................................................ 16
XI.     FEASIBILTY OF PROPOSED PLAN OF REORGANIZATION ............................ 16
XII.    STATUS OF THE DEBTORS AFTER CONFIRMATION ...................................... 16
XIII.   EXECUTORY CONTRACTS & LEASES................................................................. 17
XIV.    JURISDICTION ......................................................................................................... 18
XV.     CONFIRMATION...................................................................................................... 20
XVI.    SUBSTANTIAL CONSUMMATION ....................................................................... 20
XVII.   POST-CONFIRMATION ACTS................................................................................ 20
XVIII.  "CRAM DOWN"........................................................................................................ 21
XIX.    DISCHARGE OF DEBTOR....................................................................................... 21
XX.     DEATH OR INCAPACITY ....................................................................................... 21
XXI.    CONCLUSION........................................................................................................... 21

# I.  INTRODUCTION

On April 15, 2020, Chase Douglas Clelland  and Emily H. Clelland ("Debtors") filed for Chapter 11 relief, electing protection under the small business debtor provisions of the bankruptcy code.  Debtors believe they qualify as  small business debtors 11 U.S.C. § 101(51C) insofar as they accumulated the majority of their debt while engaged in commercial or business activities (other than primarily owning or operating real property) and have total non-contingent liquidated secured and unsecured debts under the statutory debt limits.  Because they filed their case as a small business debtor case,  the U.S. Trustee has not appointed a creditors' committee to provide oversight and the Debtors remain in possession of their property.

When they filed their case, Debtors attached the most recently prepared balance sheet, statement of operations, cash-flow statement and most recently filed tax return to the petition.  Creditors have access to those documents as such are public record and can be retrieved at www.pacer.gov. Debtors will continue to file periodic reports as required in 11 U.S.C. §308, to include their profitability; reasonable approximations of their projected cash receipts and cash disbursements over a reasonable period; comparisons of actual cash receipts and disbursements with projections in prior reports; and whether they are (a) in compliance in all material respects with postpetition requirements imposed by this title and the Federal Rules of Bankruptcy Procedure; and (b) timely filing tax returns and other required government filings and paying taxes and other administrative expenses when due, however creditors should know that with the exception of their rental home, Debtors are no longer in business but are now employed by outside employers and will fund the plan with their disposable monthly income from such rental income and employment and by the sale of assets.

Pursuant to the Code, Debtors have filed this Plan setting forth the background of their filing, their past and current financial position, their projection of their future ability to pay creditors and their repayment plan.  Creditors' rights may be affected by this Plan. Claims may be reduced, modified, or eliminated.  Debtors submit the Plan contains adequate information for Creditors to make an informed decision in exercising their right to vote for the acceptance of the Plan and to comprehend the proposed treatment of Creditors and their allowed claims upon confirmation.

. Creditors should read this plan carefully and discuss it with their attorney. Creditors who do not have an attorney may wish to consult with one. Failure to object may constitute an implied acceptance of and consent to the relief requested in this document.

Creditors opposing the plan's treatment of their claims or any provision of this Plan, must file a timely objection to Confirmation. To determine the deadline to object to this Plan, Creditors must consult the Notice of Bankruptcy Case or applicable Notice/Motion served with this plan. The Court may confirm this Plan without further notice if no objection to Confirmation is filed. In addition, creditors must file a timely proof of claim in order to be paid unless set forth herein and scheduled as undisputed, noncontingent and unliquidated. Confirmation of this Plan does not bar a party in interest from objecting to a claim.

## II. DEFINITIONS

The meaning of terms not defined herein may be found in 11 USC § 101, et. seq. The following words, terms and definitions shall be used and apply specifically to this Plan:

a.      Allowed Claim shall mean each Creditor's claim or claim of interest that is accepted by the Debtors or the Court as valid for payment. Creditors must file a proof of claim with the Clerk of Court[1] for their claim to be allowed, unless otherwise provided by law or this Plan. Some claims by law can be approved only by the Court for payment. The Debtors retain the ability to object to claims regardless of confirmation of the Plan and claims treated in the Plan will be paid only to the extent they are allowed by the Court. This Plan provides for payment of a specific dollar amount to creditors.

b.      The Case shall mean this proceeding under Chapter 11, Case No. 20-01820-dd, which commenced as a voluntary petition in this Court on April 15, 2020.

c.      Chapter 7 shall mean a hypothetical case is administered under 11 U.S.C. Sections 701 et seq., wherein an estate, identical to this Debtors, with identical assets and liabilities, has its assets liquidated.

d.      Chapter 11 shall mean a case being administered under 11 U.S.C. Sections 1101 et seq. with particular emphasis on sections 1181-1195.

e.      Class of Claims shall mean all types of claims or interests (i.e., secured, priority, unsecured or interests), which are substantially identical in kind or nature and are grouped together

---

[1] http://www.scb.uscourts.gov/electronic-filing-claims

without any unfair discrimination or treatment for payment by this Plan.  Because of the small number of creditors, and the separate nature of each claim, each creditor in this Plan is treated in a separate class.

      f.      The <u>Code</u> is 11 U.S.C. Sections 101, <u>et seq.</u>, the "Bankruptcy Code".

      g.      <u>Confirmation</u> of this Plan shall be effective when the signed Order Confirming Plan is entered by the Court, after the Court has found that the Plan meets the requirements of §1191 of the Code.

      h.      <u>Court</u> shall mean the United States Bankruptcy Court for the District of South Carolina.

      i.      <u>Creditor</u> shall mean the holder of an Allowed Claim.

      j.      <u>Debtors</u> shall mean Chase Douglas Clelland and Emily H. Clelland

      k.      <u>Effective Date</u> shall mean Confirmation.

      l.      <u>Impairment</u> is defined in 11 U.S.C. §1124 and in summary means the terms of payment have changed, typically adversely. Various classes under the Plan as set forth below, are shown to be impaired.  Impairment is defined in 11 U.S.C. §1124.

      m.      <u>Plan</u>  shall  mean  this Plan of Reorganization.

      n.      <u>Priority and Administrative Claims</u> shall mean all claims entitled to priority status under 11 U.S.C. § 507 and § 364 or other specific provisions of the Code.

      o.      <u>Secured Claim</u> shall mean each individual claim completely or partially secured by collateral entitled to secured status under Title 36 of the Code of Laws of South Carolina (UCC provisions) or South Carolina law.

      p.      <u>Unsecured Claims</u> shall mean all claims against the Debtors other than secured claims, priority and administrative claims, or claims of interest, including unperfected claims.


THE PLAN HAS BEEN PREPARED BY THE DEBTORS BASED ON INFORMATION AVAILABLE TO THEM.  NO REPRESENTATIONS CONCERNING THE DEBTORS (PARTICULARLY AS TO THE FUTURE BUSINESS OPERATIONS OR THE VALUE OF THE ASSETS OF THE DEBTORS) ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS  PLAN. THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.  ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE, THE DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THE INFORMATION CONTAINED IS WITHOUT ANY INACCURACY.

### III. BACKGROUND

In fall of 2018, Debtor Chase Clelland ("Debtor") sought to purchase a business to supplement his family's income. Debtor was seeking an established service based business to purchase. Debtor identified Move Buddies, LLC on a business listing service and the cash flows appeared to be within the parameters of his search. Debtor hired a professional named Ray Skaug to assist in review of the business. Debtors had no association with Move Buddies, LLC prior to the purchase. Mr. Skaug had previous experience in commercial lending for US Bank and now provides financial consulting to prospective buyers and financial analysis.  Debtor  hired Mr. Skaug, to study the financial analysis to make sure all was good for purchasing a viable business. He was introduced to Mr. Skaug through looking at a previous business.   Debtor made the offer to the then owners, Jeremy Golding and Adam Exas, who accepted the offer and the sale closed on December 14, 2018. Twende Corporation was formed via a Rollover for business startup (ROBS) with the help of Guidant Financial in the fall of 2018. Twende Corporation, a C Corp, was established in order to facilitate the purchase.

Mr. Skaug introduced Debtor to his contact "Rick" at United Community Bank.  Prior to the closing of the sale, Debtor was on a three way phone call with Rick and Ray preparing for the interview with Natalie in underwriting. Trick and Ray were coaching Debtor  on what to say to Natalie and what not to say with her in order to get the loan approved. Looking back, Debtor believes the loan should have never been made. At the time, he was wrapped up in listening to professionals guide him through the purchase process, looking forward to what he thought from the rendered advice would be a good business investment.  Debtor left his current job at Grow Financial Credit Union with no intent to return when he started his business, with the intention to devote his energies entirely to Twende Corporation.

To consummate the purchase, Debtor formed Twende Corporation. Debtor owns 10.5% of Twende Corporation and the Twende Corporation 401k Plan ("Twende 401k") owns the other 89.5%. Debtor is the trustee of Twende 401k. Per the guidelines, Debtor offered ownership in Twende 401k but no one was interested. Twende 401k is not officially closed but is winding up. All tax filings are current. Emily Clelland ("Co-Debtor") is not an owner of Twende Corporation or of  Twende 401k.

Twende Corporation accepted a $2.1 loan from United Community Bank and used it to purchase Move Buddies, LLC and have a $100,000 line of credit.  The former owners of Move Buddies, LLC, Adam Exas and Jeremy Golding, received the $2 million from the loan. The former owners agreed to

indemnify Twende Corporation for any liabilities arising from Move Buddies, LLC prior to the purchase. The $100,000 line of credit was available and only used as needed to take draws.

On the first business day Debtor after took over ownership an employee was murdered after hours.  The internal culture of the business was drastically different than what he experienced during due diligence. Debtor immediately experienced issues with the landlord, including having raw sewage running into the facility. Debtor believes he was misled during the purchase process.  Debtor later learned from his attorney for Move Buddies, LLC that the "CPA" for the previous owners as referenced by "our CPA" in numerous correspondence, was not in fact a CPA. Debtor was informed that he may have lost his CPA license. Debtor still does not have all the financial statements from before the purchase that he was supposed to have received.

Additionally, two weeks after the purchase of the business, the housing market and overall economy slowed due to trade issues with China which drastically affected Debtor's small business. Debtor began writing to Congress, the Senate and White House asking for the trade conflict to stop.

Furthermore, Debtor experienced a contentious relationship with the previous owners, and had to ban them from the facilities due to altercations with employees.   Previous owners filed to turnover financial records, which Debtors had to threaten litigation to obtain. Upon receipt, Debtor discovered that the corporation he purchased was losing money prior to the purchase in 2018. The estimated loss for the month of November 2018 was over $25,000 according to Debtor's analysis of the newest financial information. Debtor believes the business deal should have never been underwritten by United Community Bank. The financial information that Debtor was able to go back and justify shows a tremendous weight put on the best month the previous owners had, July 2018. The company made a majority of their money in that one month for the year, which skewed the worth of the company tremendously. In only 4 months, by April 2019, Twende Corporation was insolvent.

Debtor attributes the loss to the shaky foundation of the underwriting.  Debtor hired a CPA in order to try to sue for fraud, however the CPA stated he would charge $50,000 and Debtors did not have the funds to pay to pursue the action. Unable to negotiate with UCB, and facing lawsuits from the business' creditors, Debtors felt no choice but to close the business and file for bankruptcy.  During the time Twende operated, husband took approximately $2,000 from the business, due to the finances being so poor.

At the time Debtor ceased operations, there were 4 trucks on site that Twende Corporation returned to United Community Bank along with the computers, staplers and other office equipment.

Chase returned leased trucks, left the keys to the business with his former attorney who provided the keys to the landlords.  Other personal property including iPads, used computers purchased from the prior owners, tvs, used furniture fixtures and equipment, arcade game, basketball/foosball table, and antique collectible auto cars were left in the business for the lender.  Debtors have received no accounting from United Community Bank. Debtors are still in possession of the QuickBook records covering the sellers records and his own.

At the time the business shut down, Debtors had possession of some customer property and returned it.  Glenn and Brenda Maley, listed as notice only on Schedule E/F were affected by the shut down, and Debtors coordinated with another moving company to move their items. Debtors attempted to keep Twende operational through summer, as summer is the busy season but was unable to do so. Debtors also attempted to sell the corporation but was unable to find a purchaser.

In February 2019, Chase Clelland returned to his former employer, Grow Financial Federal Credit Union, in a different position as Vice President over the fraud department, money laundering, cyber security and risk management.  Debtor spends between 1-2 weeks per month in Tampa for his job. His entire team is in Florida. Debtor is only reimbursed for hotels and has to cover other expenses like food, gas and mileage on his own.

This experience has been tremendously difficult on Debtors' marriage, health and mental well-being. Debtors believe that bankruptcy will allow them to obtain a fresh start to recover financially.

## IV. FINANCIAL CONDITION OF THE DEBTOR

When they filed their bankruptcy case, Debtors filed bankruptcy schedules, a copy of which can be retrieved at www.pacer.gov.  Schedule I reflects the Debtors' projected monthly income based on their current earnings.  Schedule J describes in detail the Debtors' projected monthly expenditures.  Ordinarily, husband receives bonuses from his work, however he does not anticipate one this year due to COVID and company projections not being met. Debtors' budget also includes educational expenses for husband to obtain a master's degree in jurisprudence and fraud/risk management at Texas A&M.  Husband hopes to be promoted once he has the degree, but there is no assurance of that occurring. Husband is 44 years of age and wife is 42 years of age.

The net disposable monthly income of the Debtors as revealed at the bottom of Schedule J is approximately $2,553.27 after payment of the contractual mortgage payments[2]. Debtors have also incorporated their projected budget to this disclosure statement as attached as **Exhibit A.** The proposed plan payments set forth in Section IX require a payment of $2,508.13 however this includes the mortgage payment on Debtors' residence of $1,685.  After adding that back in, Debtors have $4,238.27 to fund their plan.

| Class | Creditor | Monthly Payment |
|-------|----------|-----------------|
| Class 1 | Administrative Priority | n/a |
| Class 2 | Wells Fargo (residence) | $ 1,685.00 |
| Class 3 | Wells Fargo (rental) | $ 637.16 |
| Class 4 | UCB (residence) | $ 154.24 |
|  | UCB (rental) | $ 377.37 |
| Class 5 | BB&T | $ 297.75 |
| Class 6 | DVC | $ 291.81 |
| Class 7 | Unsecured General Non Priority | $ 569.86 |
| Class 8 | Nelnet | $ 180.00 |
| Total Cash Flow Needed |  | $ 4,193.13 |

Debtors anticipate wages being sufficient to fund the Plan as set forth herein pursuant to 11 U.S.C. §1194.

## V.  ASSETS AND DEBTS

Debtors have the assets listed on Schedules A and B of their bankruptcy schedules and believe the values stated therein are correct.  The known liens on the collateral are  listed on Schedule D in the amount stated therein with the liens listed on Schedule D unless a claim has been filed. If a claim has been filed, the amount of the claim will be allowed unless Debtors file an objection and the court sustains the objection.  Claims can be viewed at www.pacer.gov. The liens are secured by real estate and vehicles as further set forth on bankruptcy Schedule D and filed claims. After having pulled a UCC search, Debtors believe no one has a lien on cash collateral.  Property of the estate shall include continued earnings and accumulation of assets during the three years Debtors are in bankruptcy. During that time, Debtors shall remain in possession of all property of the estate.

---

[2] Paystubs to substantiate income are available upon reasonable request.

## VI. LIQUIDATION ANALYSIS

Debtors listed assets on bankruptcy Schedules A and B and secured debts on Schedule D.  They took exemptions on Schedule C.  The amount of unexempt equity is $1095.84 as summarized in the chart below, which is the amount Debtors believe creditors should expect to share if the assets were liquidated:

| Asset | Value | Debt | Gross Equity | Exemptions | Net Equity |
|---|---|---|---|---|---|
| 107 Deer Crossing Road, Elgin | $ 255,000.00 | $ (2,331,605.45) | $ - | $ - | $ - |
| 248 Calli Lane, Elgin | $ 125,500.00 | $ (2,165,229.60) | $ - | $ - | $ - |
| DVC Timeshare | $ 13,020.00 | $ (12,191.00) | $ - | $ - | $ 829.00 |
| 2013 Porche Cayenne | $ 9,558.00 | $ (5,499.00) | $ 4,059.00 | $ (7,622.00) | $ - |
| 2013 BMW 328i | $ 3,614.00 | $ - | $ 3,614.00 | $ - | $ 3,614.00 |
| Furniture | $ 2,175.00 | $ - | $ 2,175.00 | $ (2,175.00) | $ - |
| electronics | $ 300.00 | $ - | $ 300.00 | $ (300.00) | $ - |
| cell phone, computers, ipads, etc. | $ 600.00 | $ - | $ 600.00 | $ (600.00) | $ - |
| sport/hobby equipment | $ 300.00 | $ - | $ 300.00 | $ (300.00) | $ - |
| clothes | $ 600.00 | $ - | $ 600.00 | $ (600.00) | $ - |
| jewelry | $ 100.00 | $ - | $ 100.00 | $ (100.00) | $ - |
| Grow FCU account | $ 7,369.91 | $ - | $ 7,369.91 | $ (7,369.91) | $ - |
| WF account | $ 101.16 | $ - | $ 101.16 | $ (103.15) | $ - |
| AllSouth account | $ 612.89 | $ - | $ 612.89 | $ (612.89) | $ - |
| Grow Savings account | $ 5.00 | $ - | $ 5.00 | $ - | $ 5.00 |
| Christmas Club account | $ 725.11 | $ - | $ 725.11 | $ (725.11) | $ - |
| Wells Fargo account | $ 2.00 | $ - | $ 2.00 | $ (2.00) | $ - |
| 401k through employer | $ 39,776.20 | $ - | $ 39,776.20 | $ (39,776.20) | $ - |
| 401k BCBS | $ 10,454.42 | $ - | $ 10,454.42 | $ (10,454.42) | $ - |
| ROTH IRA | $ 1.32 | $ - | $ 1.32 | $ (1.32) | $ - |
| Coinbase wallet | $ 50.62 | $ - | $ 50.62 | $ - | $ 50.62 |
| XRP Coins | $ 1,400.00 | $ - | $ 1,400.00 | $ - | $ 1,400.00 |
| | | | | | $ 5,898.62 |

Unsecured creditors will be paid at least the amount of unexempt equity, representing the amount unsecured creditors would receive in a hypothetical Chapter 7 case.  Debtors believe their known creditors would receive less than 1% in a Chapter 7 case, which is the unexempt equity in assets of $5,898.62 divided by the total unsecured and undersecured debt of $2,051,512.68.  Of their available $4,238.27 per month excess income available for secured and unsecured creditors, Debtors plan to pay

approximately $569.86 per month to unsecured creditors, which equates to approximately 1% paid to

unsecured creditors. Debtors have budgeted less for husband's educational expenses until the rental

property sells, after the sale of the property, Debtors will use the excess to fund husband's tuition.

Unsecured creditors will receive no interest and may receive payments less than contractually expected.

Secured creditors will be paid the value of their Allowed Claims if lower than the balance of the

debt.  Secured creditors will be paid the balance of the debt, if less than the value of their Allowed

Claims.  Secured Creditors will receive market rate interest and may receive payments less than

contractually expected. Debtors' plan does not surrender collateral securing debt. Creditors who are

undersecured may be able to participate in the Plan distribution both as a secured and unsecured creditor.

## VII.    TAX IMPLICATIONS

Debtors have considered the tax implications of this Plan with  their tax preparer or accountant

and believe the tax implications will not hinder the Debtors' ability to comply with their obligation to

make payments to their creditors.

## VIII.   LITIGATION

At the time the Petition was filed, the Debtors had the following litigation and claims

as set forth on their Schedules and Statement of Financial Affairs:

- *NS Investments LLC, vs. Move Buddies, LLC, Adam Exas, Twende Corporation, Chase Clelland*, C/A 2019 CP 180228 in Dorchester County Court of Common Pleas. Upon information and belief this case was pending at the time of the filing of the petition and has been stayed by the bankruptcy filing.  The law suit will be dismissed  with prejudice as to the Debtors upon Confirmation of the Plan.

- *United Community Bank vs. Move Buddies, LLC, Twende Corporation, Chase D. Clelland and Emily Clelland*, C/A 2020-CP-4001092 filed in Richland County Court of Common Pleas. Upon information and belief, this matter was pending at

the time of the filing of the petition and has been stayed by the bankruptcy filing. Plaintiff is a secured creditor but the claim is undersecured.  Plaintiff will be paid as set forth in the Plan and the law suit shall be dismissed with prejudice as to the Debtors upon Confirmation of the Plan.  While Debtor may have claims against United Community Bank pertaining to the closing of the loan, Debtor believes the cost of the suit is prohibitive and does not intend to pursue them.

- As indicated in Debtors' schedules, Debtors believe they may have a claim against United Community Bank, the sellers, the broker, and potentially other individuals associated with the identification, purchase and financing of Twende Corporation.  After researching the cost of pursuit, Debtors Debtors cannot afford to pursue litigation and will not proceed further with these claims.

Debtors do not believe there are any judgments to address in the Plan.  Debtors are unaware of any post-petition claims that have arisen and have no intention to sue.

## IX. PROPOSED PLAN

NOTE TO ALL CREDITORS:   THE LISTING OF THE CREDITORS OF THE DEBTORS IN THE SCHEDULES OR PLAN OF REORGANIZATION DOES NOT CREATE AN ALLOWED CLAIM.  THE DEBTORS RETAIN THE RIGHT TO OBJECT TO ANY AND ALL CLAIMS FOR ONE HUNDRED TWENTY  (120) DAYS AFTER CONFIRMATION AND RATHER THAN OBJECTING TO THE CLAIM MAY ALTER THE TREATMENT OF PAYMENT OF THE CLAIM, INCLUDING PAYMENT IN PART SUCH AS THROUGH VALUATION, BY THE PLAN PROVISIONS.  IF THE DEBTORS FILE AN OBJECTION, A HEARING MAY BE HELD BY THE COURT AND THE COURT WILL MAKE THE DETERMINATION AS TO WHETHER AND IN WHAT AMOUNT THE CLAIM IS ALLOWED.  ONLY THOSE CREDITORS LISTED HEREIN HAVING EITHER AN ALLOWED CLAIM OR CLAIM LISTED AS UNLIQUIDATED, UNDISPUTED AND NONCONTINGENT ON SCHEDULES D, E, OR F WILL BE PAID.  THE PLAN SHALL GOVERN THE AMOUNT AND TERMS PAID.  THE LIENS SHALL BE SATISFIED WHEN THE TERMS OF THE PLAN HAVE BEEN MET. IT SHALL BE THE CREDITOR'S RESPONSIBILITY TO SATISFY THE LIEN PROMPTLY.

ALL PARTIES IN INTEREST AND CREDITORS ARE URGED TO PAY CLOSE ATTENTION TO THE LIEN PRIORITY AND LISTED COLLATERAL AS NEITHER THE

COUNSEL FOR THE DEBTORS NOR DO THE DEBTORS GUARANTEE THE ACCURACY OF THE GIVEN INFORMATION.  UPON CONFIRMATION, THE REPAYMENT SCHEME SHALL BE A BINDING CONTRACT BETWEEN THE CREDITORS AND THE DEBTORS.  CREDITORS SHOULD CONTACT THEIR ATTORNEY IF THEY DISAGREE WITH THE TREATMENT SET FORTH BELOW.

CLASS NUMBER 1:    This class consists of all administrative priority expenses incurred during this case and includes trustee fees, professional fees and expenses and any and all taxes incurred during the administration of this estate.    These amounts are current and will continue to be paid from cash flow or from retainer when they are due.  Currently, counsel for the Debtors has $7,641 being held in retainer and has billed approximately $5,000 more time than amount in retainer. Counsel will cap her postpetition fees at $13,000 assuming confirmation of this consensual plan. The capped fees will require $6,000 in additional fees by the Debtors to be paid over time pursuant to agreement by Counsel and Debtor upon approval of  Counsel's fee application by the court. The chapter 11 Trustee has agree to cap her fees at $5,500 if the plan is confirmed as a consensual plan.   Debtors will pay the trustee's fees on a monthly basis.  The Trustee will be dismissed upon substantial consummation of the plan. This class is unimpaired.

CLASS NUMBER 2:     This class consists of the secured claim of Wells Fargo Bank, NA. which has a secured claim on Debtors' residence located at 107 Deer Crossing Road, Elgin, SC.  Debtors believe the value of the property securing the debt is $255,000, based on a realtor's estimation of comparable sales, as further described on their bankruptcy Schedule A. This class filed its claim on April 29, 2020 in the total amount of $227,231.25. Debtors believe the class is fully secured. The contractual payment is $1,685 per month and accumulates annual interest at 4.25%. Debtors are current and do not propose to change treatment to the Class. This Class is secured, unimpaired.

CLASS NUMBER 3:     This class consists of the secured claim of Wells Fargo Home Mortgage which has a first mortgage on Debtors' rental property located at 248 Calli Lane, Elgin, SC 29045. Originally, Debtors purchased this property in 2004 and lived in the home before moving to their current residence.  Debtors now lease the property for $1,000 per month to an unrelated tenant. Although not in writing, the original lease renewed verbally for a year effective May 1, 2020. Debtor's current monthly mortgage payment is $499.63 plus $257.68 escrow for a total payment of $756.68.  The interest rate is a variable rate, currently at 4%. As stated on Schedule A of their bankruptcy schedules, Debtors believe the fair market value of the property securing the debt to this class is $125,500.  This class filed its claim on

May 4, 2020 in the total amount of $62,725.69, thus this class is fully secured.  The claim asserted no arrearage.  Upon confirmation, the loan shall be modified by Debtors' paying  the balance of the claim  at a 4% fixed rate of interest over a period of 240 months at a monthly principal and interest of $380.11 per month. Adding  $257.05 per month escrow, the  total monthly payment will be  $637.16 to commence upon the Effective Date of the Plan and be paid until the loan is paid in full.  Although Debtors have provided a long term payout, they believe this class will be paid faster.  Debtors intend to sell this property to the tenant for $125,500, once the tenants can obtain third party financing or to a third party at similar price if the tenant cannot purchase for the best price and terms. Upon the sale, this class will be paid in full. This class is secured, <u>impaired</u>.

CLASS NUMBER 4:    This class consists of the claim of <u>United Community Bank</u> ("UCB"). This loan was taken out for business purposes.  UCB holds a second mortgage on the property described in classes 2 and 3 as set forth below.   Upon information and belief, the balance owed to UCB is $2,100,000, although it has not filed a claim.   UCB shall receive payment on its Allowed Claim as follows:

<u>107 Deer Crossing Road</u>: UCB will be paid a total maximum sum of $25,453.10, which is the difference in the value of the home $255,000 and the amount of the first mortgage debt, $229,546.90. Debtors shall pay this amount in monthly payments of $154.24 over 240 months at a fixed 4% annual rate of interest. In the event of the sale of the property, UCB will receive the balance remaining of the $25,453.10 plus 4% annual interest less any payments made post-petition. Payments will commence upon the Effective Date. Upon payment of this amount, UCB will release its lien.

<u>248 Calli Ln</u>:  UCB will be paid the difference in the value of the home, first mortgage and costs of sale, with the final amount being determined upon the sale of the property if sold in 3 years.  If the home does not sell in 3 years,  UCB shall be paid  the net equity stated on Schedule A with no deductions for costs of sale otherwise.  For example, if the property does not sell in 3 years,  UCB  will receive $62,274.31, representing the difference of the $125,000 value of Schedule A and the pay off of the Allowed Claim of Class 3.  Upon payment of the net equity, UCB will release its lien. Debtors believe the contractual loan accrues interest at a variable annual percentage of 7.75%. Until sale of the property, Debtors shall pay the equity to UCB in the amount of $62,274.31 amortized over 20 years in monthly principal and interest payments of $377.37 at a fixed 4.00% rate of interest, up to a period of 240 months.  Payments will commence

upon the Effective Date. The remaining debt will be treated in Class 7 as a general unsecured non priority creditor.

This class is secured, <u>impaired</u>.

CLASS NUMBER 5:  This class consists of the secured claim of <u>BB&T</u> which has a purchase money security interest lien on a 2013 Porsche Cayenne. BB&T filed its claim on April 23, 2020 in the amount of $4,643.19. Debtor's contractual payments are $297.75 per month at a fixed rate of 2.49% rate of interest and Debtors are current on the payments. Debtors propose to continue pay this loan along the existing terms of the contract. Upon payment in full, BB&T shall release its lien on the title.  This class is secured, <u>unimpaired</u>.

CLASS NUMBER 6:   This class consists of the secured claim of <u>Disney Vacation Club Member Services</u> for purchase of a DVC Timeshare.  Debtors believe the balance owed is $11,924.16 and believe that balance to be less than the value of the property under lien.  This class has not filed a claim. The contractual terms require the Debtors to pay $273.31 per month at 12% interest and the loan is current. Debtors propose to pay $291.81 per month at a 4% rate of interest for 44 months or until the Allowed Claim has been paid in full. This class is secured, <u>impaired</u>.

CLASS NUMBER 7:  This class consists of <u>undisputed, general non priority unsecured claims</u>. Debtors believe the total debt owed to this class is $39,240.09 unsecured plus $2,012,272.59 undersecured debt for a total of $2,051,512.68 in this class. General unsecured creditors are expected to receive 1% of their claims over a period of 36 months after confirmation as set forth below:

| Creditor | Claim/Debt | 1% of total | Mo. Payment (36 mo) |
|---|---|---|---|
| AmEx/Bankruptcy | $ 754.00 | $ 7.54 | $ 0.21 |
| Belk | $ 1,561.24 | $ 15.61 | $ 0.43 |
| Beth Santili Law | $ 180.82 | $ 1.81 | $ 0.05 |
| Chase Card Services | $ 6,663.51 | $ 66.64 | $ 1.85 |
| Dillard's Card Services | $ 1,154.71 | $ 11.62 | $ 0.32 |
| Nelnet | $ 7,489.00 | $ 74.89 | $ 2.08 |
| NS investments LLC | $ 12,153.74 | $ 121.54 | $ 3.38 |
| Synchrony Bank | $ 1,561.00 | $ 15.61 | $ 0.43 |
| Wells Fargo Bank, NA | $ 7,722.07 | $ 77.22 | $ 2.15 |
| UCB (undersecured portion) | $ 2,012,272.59 | $ 20,122.73 | $ 558.96 |
| Totals | $ 2,051,512.68 | | $ 569.86 |

Payment may be made lump sum sooner than scheduled. This class is unsecured, <u>impaired</u>.

CLASS NUMBER 8:    This class consists of <u>Nelnet</u>, a student loan owed by Co-Debtor. This class filed its claim on April 24, 2020 in the amount of $6,765.14.  The loan is presently in forbearance allowing voluntary payments, although the contractual payment is $183 per month.  Debtors are current. Debtors intend to continue paying this debt per the agreement until paid in full. This class is unsecured, <u>unimpaired</u>.

CLASS NUMBER 9:    This class consists of the following <u>interested parties</u> are noted on the schedules as either notice only or disputed.

Adam Exas
Anderson Family LP
AT&T
Bridgefield Casualty Insurance Co.
Columbia Crest Resource Group
Glenn & Brenda Maley
GS Bank USA
ITAS
Jeremy Golding
Palmetto Land Buyers
Penske Truck Rental
Rich Heaton/Transworld Business
Safetouch Security
Verizon

Debtors do not believe they owe money to these interested parties and as such they will not be receive a disbursement.  They will not have a vote unless they file an Allowed Claim and participate in another class of creditors. This class is unsecured, <u>unimpaired</u>.

| **Class** | **Creditor** | **Monthly Payment** |
|---|---|---|
| Class 1 | Administrative Priority | n/a |
| Class 2 | Wells Fargo (residence) | $        (1,685.00) |
| Class 3 | Wells Fargo (rental) | $          (637.16) |
| Class 4 | UCB (residence) | $          (154.24) |
|  | UCB (rental) | $          (377.37) |
| Class 5 | BB&T | $          (297.75) |
| Class 6 | DVC | $          (291.81) |

| Class 7 | Unsecureds | $ | (569.86) |
| Class 8 | Nelnet | $ | (180.00) |
| Total of Payments | | $ | (4,193.13) |
| Total Available DMI | | $ | 4,238.27 |

In the event Debtors pay off the plan or any class early, or pay faster than proposed herein, there shall be no prepayment penalty.

## X.  CLAIMS OBJECTIONS

As of the date of the filing of this plan Debtors have only objected to the claim of Bridgefield Casualty Insurance Company and on June 8, 2020, this court entered the order disallowing the claim. The Debtors may file claims objections within 120 days after Confirmation or pay the claimed or scheduled amount as set forth in the Plan.

## XI. FEASIBILTY OF PROPOSED PLAN OF REORGANIZATION

The Bankruptcy Code requires that in order for a plan to be confirmed, Debtors must demonstrate that the plan is not likely to be followed by a liquidation or the need for further reorganization of the Debtors, unless such liquidation or reorganization is proposed in the plan.  Debtors expect their monthly income and expenses to remain the same during the three year plan payment as they have available now unless they sell the rental home, in which their income will decrease.  Debtors propose to pay their disposable income into the Chapter 11 plan, which would not be required if they had filed a case under Chapter 7. The Debtors believe creditors would receive more because of the size of the unsecured debt and the extent of liens if the Debtors propose a repayment plan under Chapter 11 than under a proposed liquidation in a Chapter 7 case.  Debtors believe the case would be a no asset Chapter 7 case with no distributions to Creditors.  Debtors believe in Chapter 11 all unsecured creditors, including the undersecured claim of UCB would receive more by allowing the property to be sold with the equity paid, than if it foreclosed.

## XII.    STATUS OF THE DEBTORS AFTER CONFIRMATION

After confirmation of this Plan, the assets of the reorganized Debtors shall consist of substantially the same assets as exist on the date of this Plan.  The equity position will remain the same in all assets,

including the defunct business, however it is for sale if anyone wants to offer to purchase the Debtor's interest.

Any defaults, contracts, judgments or other indebtedness whatsoever, with respect to any such indebtedness or obligations, or in the terms and conditions thereof, which are or may be based on events, facts or occurrences taken place on or before the date of confirmation, or which could have taken place or be deemed to take place on or before such date shall be deemed to have been waived and shall not thereafter be a basis for the exercise by any person for any right or remedy whatsoever, as a creditor or claimant against the Debtors except as set forth in this Plan.

From and after Confirmation of this Plan, the Debtors are exonerated from any and all claims other than professional fees having accrued postpetition if a claim is not filed by a creditor or claimant of interest against the Debtors prior to the date set by this Court and unless scheduled as uncontingent, undisputed and liquidated. The Debtor will, from and after Confirmation of this Plan, be indebted for, and obligated to pay, only those liabilities and obligations set forth in the Plan, and only those that have been allowed or modified pursuant to this Plan, or pursuant to claims objections filed and determined subsequent to Confirmation of this Plan. The Debtor retains the right to object to claims subsequent to confirmation.

The Debtors shall retain full power after Confirmation to prosecute and defend any causes of action or proceedings by or against it, or resulting from the administration of the estate of the Debtors or resulting from any other claim by or against the Debtors or their assets, or arising prior to or existing before Confirmation, including collection of outstanding accounts receivable. Violations of the confirmed Plan will be treated as a breach of contract in addition to any applicable bankruptcy laws and subject to penalties for such violations as well as at least $2,500 in attorneys fees for litigation. Actions may be brought in this court, federal court, state court or magistrates court.

Debtors may use the services of its professionals in the prosecution or defense of such claims, and shall have full power, subject to the approval of the Court, to employ, retain and replace special counsel to represent it in the prosecution or defense of any action, and to discontinue, compromise, or settle any action or proceeding, or adjust any claim. Professionals employed by the Debtors will file fee applications until confirmation, at which time the Debtors may pay professionals directly for post-confirmation services without court permission.

## XIII.   EXECUTORY CONTRACTS & LEASES

Debtor has the following leases which shall be assumed and/or modified as stated herein:

1) Kathleen DiLauro – residential lease on real property located at 248 Calli Lane, Elgin, SC.  Lease renewed effective May 1, 2020.  Debtors shall assume this lease on a month to month basis until the property sells.

2) NS Investments, LLC – commercial lease. Debtors reject.

3) Palmetto Land Buyers, LLC – commercial lease. Debtors reject.

No further action shall be needed to effect assumption or rejection other than confirmation of the plan and such assumption or rejection shall be effective retroactively upon assumption or rejection.

## XIV.   JURISDICTION

All property remains as property of the estate until completion by the Debtors of all obligations under the Plan.  Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain jurisdiction over the Case after the Effective Date, including, without limitation, jurisdiction to:

(i)      Allow, disallow, determine, liquidate, classify, estimate or establish the priority and secured or unsecured status of any claim or interest, including the resolution of any request for payment of any administrative claim, the resolution of any objections to the allowance or priority of claims or interests and the resolution of any dispute as to the treatment necessary to reinstate a claim pursuant to the Plan;

(ii)     Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending before the Effective Date;

(iii)  Resolve any matters related to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be  liable,  and to  hear,  determine  and,  if  necessary, liquidate any claims arising therefrom and modify this Plan because of any Order impacting assumption or rejection;

(iv)  Ensure that distributions to holders of allowed claims or allowed interests are accomplished pursuant to the provisions of the Plan;

(v)      Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(vi)   Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided herein;

(vii)   Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or the Confirmation Order, including the release provisions set forth in and contemplated by the Plan and the Confirmation Order, or any entity's rights arising under or obligations incurred in connection with this Plan or the Confirmation Order;

(viii) Subject to any restrictions or modifications provided in any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, modify this Plan before or after the Effective Date pursuant to § 1127 of the Bankruptcy Code, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court Order, this Plan, , the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan, to the extent authorized by the Bankruptcy Code;

(ix)   Issue injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

(x) Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(xi) Determine any other matters that may arise in connection with or relating to the Plan, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with this Plan, or the Confirmation Order, except as otherwise provided in this Plan;

(xii) Enter an Order Closing the Reorganization Case; and

(xiii) Rule on post-confirmation matters specifically provided for in the Bankruptcy Code;

Except as otherwise provided herein, or in any contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with § 1123(b) of the Bankruptcy Code, the Debtors shall retain (and may enforce) any claims, rights and causes of action that the Debtors may hold against any person, including, _inter alia_, any claims, rights or causes of action under § 544 through 550 of the Bankruptcy Code or any similar provisions of state law, or any other statute or legal theory.  There are no such known claims.

## XV.    CONFIRMATION

Debtors request confirmation of  the Plan contending all of the applicable requirements of confirmation are met and each class of claims within the plan consents to treatment under the plan.  Upon confirmation, Debtors will distribute payment to Creditors being paid under the Plan.

## XVI.    SUBSTANTIAL CONSUMMATION

When the debtors have made the first payment under the plan, they may apply to the court to close the case.  Upon closure of the case, payments pursuant to the plan will continue as provided by the plan.  Any professionals retained after the case has been closed will not need to apply for court authorization and neither will any fees paid need court approval.  The filing of monthly reports will cease upon closure of the case.  Further, upon the closure of the case, the trustee will be discharged of her duties as trustee.

## XVII.    POST-CONFIRMATION ACTS

17.1     The Debtors, and their agents, shall perform all acts necessary to complete and consummate this Plan, to include:

a.    Prosecution of all claims against third parties and claims challenges filed against the Debtor by third parties;

b.    Execution and filing of all legal documents required; and

c.    Performance of any and all functions required by the Code.

17.2    The Debtors will file any documents requested by the Court, Trustee or by the Office of United States Trustee.

## XVIII.  "CRAM DOWN"

In respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number and two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interest that is impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes.

## XIX.    DISCHARGE OF DEBTOR

Debtors request discharge upon confirmation of the Plan.  Debtors have no domestic support or tax obligations and thus are not seeking discharge of such.

## XX.    DEATH OR INCAPACITY

In the event of premature death or incapacitation of the Debtors before having obtained a complete discharge of debts, the Plan shall remain binding to all of Debtors' creditors and  Debtors' personal representative or someone designated by the personal representative may elect to continue to pay creditors or step into the shoes of the Debtors, making decisions and filing pleadings believed to  be  in the best interest of the estate.

## XXI.    CONCLUSION

Creditors and parties in interest should review carefully the contents of the Plan of Reorganization herewith to determine specific treatment of their rights or claims against the Debtors.  The Debtors believe that the provisions it has made for its creditors are fair and equitable and that the Plan, as confirmed, will provide benefit for all parties.

/s/ Chase Douglas Clelland _____     /s/ Emily H. Clelland _____
Chase Douglas Clelland        Emily H. Clelland

            MOORE TAYLOR LAW FIRM, P.A.

            By: _____/s/ Jane H. Downey _____
               Jane H. Downey, ID 5242
               Post Office Box 5709
               1700 Sunset Boulevard
               West Columbia, SC 29171
               (803) 454-1983
               jane@mttlaw.com

               Attorney for Debtors-in possession

June 12, 2020

**Exhibit A**

**PERSONAL BUDGET FORECAST Chase & Emily Clelland**

2020

| REVENUE | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC | YEAR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | | | | | | |
| Net Income | $0.00 | $0.00 | $0.00 | $11,778.77 | $11,778.77 | $11,778.77 | $11,778.77 | $11,778.77 | $11,778.77 | $11,778.77 | $11,778.77 | $11,778.77 | $106,008.93 |
| Rental Income | $0.00 | $0.00 | $0.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,000.00 |
| Total | $0.00 | $0.00 | $0.00 | $12,778.77 | $12,778.77 | $12,778.77 | $12,778.77 | $12,778.77 | $11,778.77 | $11,778.77 | $11,778.77 | $11,778.77 | $111,008.93 |

| EXPENSES | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC | YEAR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **HOME** | | | | | | | | | | | | | |
| Mortgage 107 Deer Crossing | $0.00 | $0.00 | $0.00 | $1,685.00 | $1,685.00 | $1,685.00 | $1,685.00 | $1,685.00 | $1,685.00 | $1,685.00 | $1,685.00 | $1,685.00 | $15,165.00 |
| Insurance Included in Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Maintenance &HOA | $0.00 | $0.00 | $0.00 | $426.00 | $426.00 | $426.00 | $426.00 | $426.00 | $426.00 | $426.00 | $426.00 | $426.00 | $3,834.00 |
| Services Lawn Care | $0.00 | $0.00 | $0.00 | $300.00 | $160.00 | $235.00 | $160.00 | $235.00 | $160.00 | $160.00 | $160.00 | $160.00 | $1,805.00 |
| Utilities Elec/Gas/Water/Sewer/Phone | $0.00 | $0.00 | $0.00 | $382.00 | $532.00 | $712.00 | $812.00 | $812.00 | $642.00 | $437.00 | $417.00 | $362.00 | $5,108.00 |
| Total | $0.00 | $0.00 | $0.00 | $2,793.00 | $2,803.00 | $3,058.00 | $3,083.00 | $3,158.00 | $2,913.00 | $2,708.00 | $2,763.00 | $2,633.00 | $25,912.00 |

| **DAILY LIVING** | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Groceries | $0.00 | $0.00 | $0.00 | $800.00 | $800.00 | $800.00 | $900.00 | $900.00 | $900.00 | $900.00 | $900.00 | $900.00 | $7,800.00 |
| Dry cleaning | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $75.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $1,275.00 |
| Dining out | $0.00 | $0.00 | $0.00 | $300.00 | $420.00 | $420.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $4,740.00 |
| Dog Sitting | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $100.00 | $0.00 | $0.00 | $100.00 | $0.00 | $0.00 | $0.00 | $200.00 |
| Total | $0.00 | $0.00 | $0.00 | $1,100.00 | $1,220.00 | $1,395.00 | $1,700.00 | $1,700.00 | $1,800.00 | $1,700.00 | $1,700.00 | $1,700.00 | $14,015.00 |

| **TRANSPORTATION** | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gas/fuel | $0.00 | $0.00 | $0.00 | $370.00 | $370.00 | $370.00 | $370.00 | $370.00 | $370.00 | $370.00 | $370.00 | $370.00 | $3,330.00 |
| Insurance | $0.00 | $0.00 | $0.00 | $313.00 | $313.00 | $313.00 | $313.00 | $313.00 | $313.00 | $313.00 | $313.00 | $313.00 | $2,817.00 |
| Repairs | $0.00 | $0.00 | $0.00 | $211.00 | $211.00 | $211.00 | $211.00 | $211.00 | $211.00 | $211.00 | $211.00 | $211.00 | $1,899.00 |
| Car wash/detailing services | $0.00 | $0.00 | $0.00 | $20.00 | $20.00 | $40.00 | $40.00 | $40.00 | $40.00 | $40.00 | $40.00 | $40.00 | $320.00 |
| Car Payment | $0.00 | $0.00 | $0.00 | $297.00 | $297.00 | $297.00 | $297.00 | $297.00 | $297.00 | $297.00 | $297.00 | $297.00 | $2,673.00 |
| Car Taxes | $0.00 | $0.00 | $0.00 | $110.00 | $110.00 | $110.00 | $110.00 | $110.00 | $110.00 | $110.00 | $110.00 | $110.00 | $990.00 |
| Total | $0.00 | $0.00 | $0.00 | $1,321.00 | $1,321.00 | $1,341.00 | $1,341.00 | $1,341.00 | $1,341.00 | $1,341.00 | $1,341.00 | $1,341.00 | $12,029.00 |

| **ENTERTAINMENT** | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Hulu TV | $0.00 | $0.00 | $0.00 | $75.00 | $75.00 | $75.00 | $75.00 | $75.00 | $75.00 | $75.00 | $75.00 | $75.00 | $675.00 |
| NetFix | $0.00 | $0.00 | $0.00 | $18.00 | $18.00 | $18.00 | $18.00 | $18.00 | $18.00 | $18.00 | $18.00 | $18.00 | $162.00 |
| Spectrum WIFI | $0.00 | $0.00 | $0.00 | $85.00 | $85.00 | $85.00 | $85.00 | $85.00 | $85.00 | $85.00 | $85.00 | $85.00 | $765.00 |
| Amazon Prime | $0.00 | $0.00 | $0.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $135.00 |
| Total | $0.00 | $0.00 | $0.00 | $193.00 | $193.00 | $193.00 | $193.00 | $193.00 | $193.00 | $193.00 | $193.00 | $193.00 | $1,737.00 |

| **HEALTH** | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Crossfit Creed | $0.00 | $0.00 | $0.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $2,250.00 |
| Insurance | $0.00 | $0.00 | $0.00 | $149.00 | $149.00 | $149.00 | $149.00 | $149.00 | $149.00 | $149.00 | $149.00 | $149.00 | $1,341.00 |
| Prescriptions | $0.00 | $0.00 | $0.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $90.00 |
| Over-the-counter drugs | $0.00 | $0.00 | $0.00 | $80.00 | $80.00 | $80.00 | $80.00 | $80.00 | $80.00 | $80.00 | $80.00 | $80.00 | $720.00 |
| Co-payments/out-of-pocket | $0.00 | $0.00 | $0.00 | $0.00 | $125.00 | $257.00 | $257.00 | $257.00 | $257.00 | $257.00 | $257.00 | $257.00 | $1,924.00 |
| Veterinarians/pet supplies | $0.00 | $0.00 | $0.00 | $308.00 | $308.00 | $308.00 | $308.00 | $308.00 | $308.00 | $308.00 | $308.00 | $308.00 | $2,772.00 |
| Total | $0.00 | $0.00 | $0.00 | $797.00 | $922.00 | $1,054.00 | $1,054.00 | $1,054.00 | $1,054.00 | $1,054.00 | $1,054.00 | $1,054.00 | $9,097.00 |

| **VACATIONS** | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Disney Club Dues | $0.00 | $0.00 | $0.00 | $75.00 | $75.00 | $75.00 | $75.00 | $75.00 | $75.00 | $75.00 | $75.00 | $75.00 | $675.00 |
| Disney Vaction Club | $0.00 | $0.00 | $0.00 | $274.00 | $274.00 | $274.00 | $274.00 | $274.00 | $274.00 | $274.00 | $274.00 | $274.00 | $2,466.00 |
| Food | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $100.00 | $0.00 | $0.00 | $300.00 | $0.00 | $0.00 | $100.00 | $500.00 |
| Annual Passes | $0.00 | $0.00 | $0.00 | $122.00 | $122.00 | $122.00 | $122.00 | $122.00 | $122.00 | $122.00 | $122.00 | $0.00 | $1,098.00 |
| Golf Trip | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $800.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $300.00 | $1,100.00 |
| Total | $0.00 | $0.00 | $0.00 | $471.00 | $471.00 | $1,371.00 | $471.00 | $471.00 | $771.00 | $471.00 | $471.00 | $871.00 | $5,839.00 |

| **RECREATION** | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Club Dues | $0.00 | $0.00 | $0.00 | $458.00 | $400.00 | $450.00 | $500.00 | $500.00 | $400.00 | $400.00 | $400.00 | $400.00 | $3,908.00 |
| Sports equipment | $0.00 | $0.00 | $0.00 | $120.00 | $200.00 | $300.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $620.00 |

| | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC | YEAR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Dance/Theatre | | | | $0.00 | | | | | $0.00 | $150.00 | $0.00 | $300.00 | |
| Total | $0.00 | $0.00 | $0.00 | $578.00 | $600.00 | $900.00 | $500.00 | $500.00 | $550.00 | $400.00 | $400.00 | $400.00 | $4,828.00 |
| **DUES/SUBSCRIPTION** | | | | | | | | | | | | | |
| Larry Cheung | | | | $1,500.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,500.00 |
| TXG | $0.00 | $0.00 | $0.00 | $2.00 | $2.00 | $2.00 | $2.00 | $2.00 | $2.00 | $2.00 | $2.00 | $2.00 | $18.00 |
| Sirius XM Radio | $0.00 | $0.00 | $0.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $450.00 |
| Apps Various | $0.00 | $0.00 | $0.00 | $55.00 | $55.00 | $55.00 | $55.00 | $55.00 | $55.00 | $55.00 | $55.00 | $55.00 | $495.00 |
| Charity | $0.00 | $0.00 | $0.00 | $160.00 | $160.00 | $160.00 | $160.00 | $160.00 | $160.00 | $160.00 | $160.00 | $160.00 | $1,440.00 |
| Total | $0.00 | $0.00 | $0.00 | $1,767.00 | $267.00 | $267.00 | $267.00 | $267.00 | $267.00 | $267.00 | $267.00 | $267.00 | $3,903.00 |
| **PERSONAL** | | | | | | | | | | | | | |
| Clothing | $0.00 | $0.00 | $0.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $250.00 | $250.00 | $250.00 | $200.00 | $1,950.00 |
| Gifts | $0.00 | $0.00 | $0.00 | $0.00 | $50.00 | $50.00 | $0.00 | $100.00 | $0.00 | $150.00 | $0.00 | $300.00 | $650.00 |
| Salon/barber | $0.00 | $0.00 | $0.00 | $0.00 | $150.00 | $350.00 | $50.00 | $50.00 | $50.00 | $350.00 | $50.00 | $50.00 | $1,100.00 |
| Books | $0.00 | $0.00 | $0.00 | $0.00 | $20.00 | $0.00 | $20.00 | $0.00 | $20.00 | $0.00 | $20.00 | $0.00 | $80.00 |
| Nail Care | $0.00 | $0.00 | $0.00 | $35.00 | $85.00 | $85.00 | $85.00 | $85.00 | $85.00 | $85.00 | $85.00 | $85.00 | $715.00 |
| Total | $0.00 | $0.00 | $0.00 | $235.00 | $505.00 | $685.00 | $355.00 | $435.00 | $405.00 | $835.00 | $405.00 | $635.00 | $4,495.00 |
| **FINANCIAL OBLIGATIONS** | | | | | | | | | | | | | |
| Retirement IRA To Be Established | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $600.00 |
| Credit card payments | $0.00 | $0.00 | $0.00 | $100.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $100.00 |
| Income tax (additional) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **PAYMENTS TO CREDITORS** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$700.00** | **$700.00** | **$700.00** | **$700.00** | **$700.00** | **$700.00** | **$700.00** | **$4,900.00** |
| Total | $0.00 | $0.00 | $0.00 | $100.00 | $0.00 | $700.00 | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 | $5,600.00 |
| **MISC PAYMENTS** | | | | | | | | | | | | | |
| Guidant Financial for Twende 401k Plan | $0.00 | $0.00 | $0.00 | $149.00 | $149.00 | $149.00 | $149.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $596.00 |
| Legal Fees | $0.00 | $0.00 | $0.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $2,250.00 |
| Education Tuition | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,505.00 | $1,505.00 | $1,505.00 | $1,505.00 | $1,505.00 | $1,505.00 | $9,030.00 |
| Mortgage 248 Calli Ln | $0.00 | $0.00 | $0.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $0.00 | $0.00 | $0.00 | $0.00 | $3,750.00 |
| Miscellanous Spending | $0.00 | $0.00 | $0.00 | $500.00 | $500.00 | $500.00 | $300.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,300.00 |
| Total | $0.00 | $0.00 | $0.00 | $1,649.00 | $1,649.00 | $1,449.00 | $2,654.00 | $2,505.00 | $1,755.00 | $1,755.00 | $1,755.00 | $1,755.00 | $16,926.00 |
| **TOTALS** | **JAN** | **FEB** | **MAR** | **APR** | **MAY** | **JUN** | **JUL** | **AUG** | **SEP** | **OCT** | **NOV** | **DEC** | **YEAR** |
| Total expenses | $0.00 | $0.00 | $0.00 | $11,004.00 | $9,951.00 | $12,413.00 | $12,418.00 | $12,424.00 | $11,849.00 | $11,524.00 | $11,149.00 | $11,649.00 | $104,381.00 |
| Cash short/extra | $0.00 | $0.00 | $0.00 | $1,774.77 | $2,827.77 | $365.77 | $360.77 | $354.77 | -$70.23 | $254.77 | $629.77 | $129.77 | $6,627.93 |